David Torchia, Plaintiff's Appellant As the Court is aware, we are here following another decision on summary judgment. The District Court granted summary judgment on plaintiff's claims for both retaliation and race discrimination. As set forth in the briefs, we believe that there were a number of factual disputes that were viewed in a light more favorable to the defendant than the plaintiff, which is the way things are supposed to be. I would certainly want to answer all the questions that the Court has, but I'd like to focus on the retaliation claim and more particularly the trial court's decision that Ms. Crawford did not engage in protected conduct. That's the first element of a retaliation claim under Title VII. The key event in this case, in terms of the protected conduct, was a conversation that Ms. Crawford had with her general manager, J. Z. Torres, in March of 2014. In that conversation, Ms. Crawford accused Mr. Torres directly of discriminating against Phillip Shelton, an African American employee at this Chipotle restaurant where all three worked. Ms. Crawford told Mr. Torres that he was discriminating against Mr. Shelton and that she needed to stop harassing him. Ms. Crawford is African American. Mr. Shelton is African American. Mr. Torres is Hispanic. She never really mentioned race, did she? That we have to make that tie for her. She really didn't. It could be argued that she stuck up for her friend, as they say. She stuck up for her friend because his time wasn't being allocated fairly and the boss didn't seem to like him that much. That's one way that the evidence could be viewed and the defendant can certainly argue that. But the proper way to look at this case on summary judgment and whether or not she engaged in protected conduct is to look at all of the surrounding facts and circumstances and what led up to that conversation. The record has evidence that Ms. Crawford had previously talked to Mr. Torres about favoritism toward Hispanics and discrimination against African Americans. The record contains evidence that in those prior conversations, Mr. Torres' typical response was, you're just sticking up for these people because you're black. There's evidence in the record that African Americans had come to plaintiff to talk about time-shaving. Not just Mr. Shelton, but other African Americans. There's evidence in the record that Mr. Shelton had been kind of passed over for promotions in favor of Hispanics. When you look at all this evidence in context and you have an African American going to a Hispanic boss talking about ill treatment toward another African American, I would suggest that it's for the jury. I have to also make the tie. Her objection to the treatment of Shelton didn't affect her, except the argument is that persuaded Mr. Torres, who apparently had an affection for her and cried when he discharged her, that he was discharging her. Treating her poorly in what way? Retaliating by firing her. Correct. Okay, so that's the, I would say, somewhat of a leap that we must make to associate her complaints on behalf of her friend, who is same race as she. Okay. Well, it's judged that's a leap, but there's inferences and circumstantial evidence that could cause a jury to say this was because of her complaint. She was terminated about 10 days after. And because we have to have that be retaliating because of race. That Mr. Torres fired her in retaliation because she directly accused him of discriminating against Mr. Shelton because of his race. And I think in all these retaliation cases, what the jury should be allowed to consider and what I ask the court to consider is, is there enough evidence for somebody like Mr. Torres, the decision maker, to form a motive to retaliate? Because that's what it's all about. Were the circumstances enough that the plaintiff said something that was offensive to the boss, accused him of discrimination so that he would want to retaliate? And I think there's certainly evidence in this case from the facts and the record that that's what happened here. Ms. Crawford was on a path toward another promotion shortly before she was let go. She'd been promoted twice before that. She received a chief's expectations evaluation regarding her crew in December of 2013, shortly before she was let go. Everything was on a positive trajectory. Then she made this complaint directly to Mr. Torres, accused him of discrimination, and she was let go for a very subjective reason. Your crew doesn't like working with you. What does that mean? So this is the argument about pretext. We're moving into that, but that's what Mr. Torres said, and that's the only evidence in the record about why she was let go. There's no testimony from Mr. Torres, no testimony from any other person about the decision. Torres was the sole decision maker. So we have a complaint followed by a termination for a very subjective reason. Should we include in this analysis the overarching requirements from on high that Mr. Torres straighten up the restaurant and discharge people who were not performing as the supervisor over him thought ought to be done? Yes, there's certainly testimony from the defendant on that point. On the other hand, if you look closely in the record, there's no testimony that anybody suggests. Well, there are records, aren't there, about having been challenged before on performance. Mr. Torres wasn't living up to the headquarters concepts. Mr. Torres was eventually fired because he had been given time and counseling to improve, but I'm not sure how that relates to the plaintiff. There's no evidence that anybody went to Mr. Torres and said the plaintiff is a lousy performer, fire her. In fact, Sam Brevis, who the defendants rely on because Mr. Torres isn't around to talk, acknowledged in his deposition that he never made that recommendation to fire Ms. Crawford. Thank you. So, again, when you put on summary judgment, review all the facts in a light most favorable to the plaintiff, you put all the events together, you don't just isolate certain facts. There's evidence, certainly, from which a jury could conclude that Mr. Torres retaliated against Ms. Crawford because of her complaint. What do you say about, your opponent says that the, and the affidavit seems pretty critical to your case, the affidavit that your client put in, and Chipotle says that affidavit shouldn't even be considered because it directly contradicted your client's deposition testimony. What do you have to say about that? Yes, Judge. First of all, it does not contradict Ms. Crawford's deposition testimony because she was never asked in her deposition about this March 2014 conversation with Mr. Torres. It never happened. There is nowhere in the record or in her deposition when the defendant even asked a general question, tell me about this conversation that's set forth in your complaint. Tell me about this conversation that's in your EEOC charge. They never asked a question. I don't know why. They can explain that to you. But that's the critical conversation in this case, and they chose not to ask a question about it. And the law in this circuit is that in circumstances like that, when there's not a question, a direct question about that conversation or a particular issue, the plaintiff can supplement the record, and it's very proper to do so with a declaration, which is just what we did. And then on the related point, the declaration was very consistent with what was in the complaint. Ms. Crawford didn't make something up. This isn't like the Reed v. Sears case where the plaintiff had been deposed and asked questions and then just completely changed her testimony and brought something up. This conversation was in the record for a long time. It was in the complaint, and the defendant chose never to ask Ms. Crawford about it. There's nothing inconsistent about what was in the declaration and the testimony. But do you think that if this was a complaint with respect to racial discrimination, that the whole deposition would not have failed to mention that at all, especially with open-ended question at the end? There's an argument whether that question allowed her to let the employer know through that deposition about, hey, this was about race. Nope. Wasn't done. Was it? Well, they didn't ask about the retaliation. The conversation, the specific. It's all about being discharged. But the conversation at issue in the declaration is the one that I've described in March of 2014 where Ms. Crawford accused directly Mr. Torres of discriminating against Mr. Shelton. They never asked a question about that. In fact, we've cited the exact testimony. What they said was, is there anything else you want to talk about in terms of that issue? The question before about that issue was whether other people's time had been taken care of. It didn't relate to Mr. Shelton. It didn't relate to the conversation with Mr. Torres. I see that my time is about up. So unless there's any other questions at this time, I'll wrap up. All right. Thank you. May it please the Court. My name is Christina Wright, and I represent Chipotle Mexican Grill. The plaintiff's lawsuit is premised on nothing more than her subjective belief that she was wrongfully terminated. She failed to make prima facie showing of either retaliation or race discrimination. She simply did not engage in protected activity as a matter of law. And I would first disagree with Plaintiff's Counsel's position that the question is whether Mr. Torres had a reason to retaliate against the plaintiff. I think the question is whether the plaintiff made an overt charge of race discrimination. Because if she didn't, then she didn't engage in protected activity. And here, the plaintiff testified in significant detail to exactly what she told Mr. Torres about time-shaving in the restaurant. And in all of that testimony, she did not mention race. She did not use the word discrimination. And in the magistrate's report and recommendation, which was ultimately adopted by the district court, the magistrate described her testimony as markedly devoid of any claim of race-based discrimination. But she did put in this affidavit, and I mean, under our case law, why is it that she can't put in the affidavit? The affidavit says you discriminated against – according to the affidavit, she tells Torres, you were discriminating against Shelton. You have to stop that. You have to stop harassing him. Now, she doesn't say you were discriminating against Shelton because of his race. So the question is, do we decide as a matter of law that Torres wouldn't have understood that to be race discrimination, or could a jury decide that? Sure. So as was earlier noted, our initial argument was that that affidavit was inconsistent with the deposition testimony and shouldn't be considered at all. But even if the court considers it, those allegations are too vague as a matter of law. Because you must say – so in order to engage in protective conduct, you can't just say you were discriminating against him. He's black. Mr. Torres is Hispanic. You were discriminating against him. You have to stop harassing him. You have to say you were discriminating against him because of his race? Well, I don't think there are any magic words that a person needs to say. But yes, she would have had to connect her complaints of discrimination and harassment to a protected category. But isn't it sort of – I mean, I feel like when people speak about discrimination, that is often the first thing that comes to mind, is race discrimination, because it's a prevalent problem in our society, and it's very much in the news. It's probably the first thing people think about is race discrimination. In other words, if I say, well, I'm going to – it is true that at the end of this court proceeding, when we were under judgment, we will have made a – we will have discriminated between the winner and the loser, or the winner and the loser, right? We will have treated you differently based on the merits of your case, but nobody would call that discrimination. I mean, it's a weird use of the word. When we talk about discrimination, we typically or often mean race, right? Well, I don't know if that's true. There are countless ways that one can discriminate against another, and many of them have nothing to do with whether a person exists in a protected category under Title VII. So it's – the discriminating that has to be done can't just be treating someone differently. It has to be treating someone differently. Well, in the workplace, of course, there is a whole team in that store. So perhaps discriminating as among the employees, shaving one's time versus another, perhaps that's a discriminate against this person in this cubicle. They get better treatment than I do. That's a type of use of that term. Maybe? Sure. And just – I certainly wouldn't condone time shaving against any employee, and it is against company policy, as the plaintiff noted to Mr. Torres. But the reason that Mr. Torres could be shaving time from one employee to another versus another may have absolutely nothing to do with race or any other protected category. And – That's – of course, that's true. No question about that. But I guess I'm wondering whether as a – you're asking us to say as a matter of law, a plaintiff can't make out a case for retaliation unless – by simply saying the words discrimination, they have to say the words race or sex or some other protected category. We can't infer from circumstances that what Mr. Torres here would have understood would have been race. Especially given his comment at the end where he says, according to her, which we have to take her facts on summary and judgment, he says, oh, you're just sticking up for him because he's black. So Mr. Torres understood that race was doing some work in this conversation. Sure. So my first point would be, yes, the plaintiff has to connect her charge of discrimination to a protected category. And I would note this court's recent decision in Land v. Southern States Cooperative, where that plaintiff used the word discrimination in a very lengthy letter but failed to connect that charge of discrimination to his protected category of – in that case, it was a disability. And I think that's what happened here. To your point about Mr. Torres's comment that the plaintiff was only sticking up for Mr. Shelton because they're both African American, the plaintiff cannot premise her retaliation claim on the conduct of somebody else. So it's the plaintiff that has to make the overt charge of discrimination. He has to make an overt charge, and the question is saying you're discriminating enough to be a charge of race discrimination. And then she has to show that he understood that that's what she was saying. But, I don't know, couldn't a jury infer from the fact that he says, wait, I'm not the discriminator, you are. You're just sticking up for him because you're both black, that he understood she was accusing him of race discrimination, and he said, wait, it's not me, it's you. Well, to the extent that you're talking about knowledge, the second element, maybe. But to the first element, that she absolutely has to get past, to even get to the knowledge part, is that she has to make the overt charge of discrimination. And I think... So she has to say, I understand, your position is she has to say the words race, or because he's black, or because, you know, some other protected category. If she doesn't say those words, saying discrimination alone is not enough. And maybe that's our case law. I'm going to have to look at this land versus southern states case. Yes. So I think that's an accurate summary. And, again, I don't think there are any magic words that she needs to use. But she does have to connect her charges to a protected class. And here that class would have been race. And she just did not. And she did not in her testimony about the underlying facts of this case. She did not in her affidavit that was submitted in response to the motion for summary judgment. And to the extent there is the court gets to the... Didn't enter complaint, did she? Is it in her complaint? That would be a place for it. Sure. I think that in her complaint she does, again, use the words discrimination. But I don't believe... I don't remember whether she did or not. To be honest, I... She did use the word race in her complaint. Would that suffice? No. I think your argument is no, because she must support that. Right. Exactly. Right, because it's... Mr. Torres was eventually the decision maker. And he, in order to retaliate against someone, you have to know what they have charged you with. And so just saying it in the complaint would be insufficient. And, of course, as the court is aware, there's no need to get to a pretext analysis if the plaintiff fails to make even a prima facie showing. But if the court does get to pretext, I think there are a couple... The complaint does target race discrimination. That's her second claim. Okay. She has a separate and distinct claim for race discrimination. And there your theory is she doesn't have a comparator, and therefore she loses. Yes. And I think by the time we got to this court, there was no dispute one way or the other that she was actually replaced by an African-American woman. So, yes, her claim comes down to entirely a comparator, which we don't believe Mr. Amaya is. And just to address pretext briefly, I think there are two main problems with the plaintiff's arguments on pretext. One being that Chipotle presented a legitimate reason for her firing, which was that crew members did not want to work with her. And that is... And all of a sudden you're just told that your coworkers don't like you and therefore we're letting you go. Doesn't that raise some suspicion as to whether that's the real reason? Well, I respectfully disagree that it comes out of the clear blue sky. The plaintiff herself testified that the crew members at the store were... Has she gotten prior warnings from management, is the point? Has she been put on notice that she was in need of behavior modification? Has she been previously disciplined or anything like that for that reason? Well, I believe that she had had conversations with managers and the plaintiff... There is a write-up by Mr. Torres regarding her being too bossy and having attitude problems and things like that. The plaintiff has claimed that that conversation never happened. When was that write-up? Is it in the record? It is, Your Honor. It's dated March 12th. It's not heavily relied on by Chipotle because the plaintiff has claimed that that conversation did not happen. But I would just note that Chipotle is an at-will employer and the plaintiff was an at-will employee. And for that reason she could have been fired for a good reason, a bad reason, or no reason at all. But not for racial discrimination. Not for race discrimination, which she was not. But there's no legal requirement that Chipotle write employees up or discipline them or anything like that. They could just decide one day that they don't want to employ her anymore. Right. Of course that's true. But as Judge Clay says, there are forbidden reasons. And in order to prove the forbidden reasons, the jury is allowed to make reasonable inferences from things that aren't there. So in other words, if you say, well, your co-workers didn't like you, and there's no evidence that that's true from prior disciplinary proceedings or testimony or something, I mean, can a jury infer that maybe that does come out of the clear blue sky? Well, I think that a jury could not infer that that is not true because the plaintiff herself testified on a number of times that she had trouble getting the crew members to do what she said, that the crew members thought she was looking down on them, that the crew members were very unhappy when she was promoted, that when she transferred from one store to the other store, she had what she called relapses in communication problems. So I think that would be very disingenuous for the plaintiff to say that an issue with crew members came out of the clear blue sky. And again, there's no legal requirement for Chipotle to memorialize those problems as an at-will employer. I would just ask the court to affirm the district court's decision in its entirety. Thank you. Thank you. Any more problems? Judge Larson, and to all of your questions about whether or not a plaintiff must specifically say the word race or sex, there's a Sixth Circuit case that was decided in 2017 or 18 that addresses that, and I cited it in our brief and in our reply brief. What's it say? What does that case say? It says that the jury should look at the surrounding circumstances, and that just because at this point the plaintiff and mom was complaining about pay disparity based on sex. I'm just wondering what the record showed with respect to race there. Is it like our case where the person never said in the depositions? It was actually a gender discrimination case, and the plaintiff, who was a female, said words to the effect that I want to be paid the same as Mr. Locke, who was a man. Oh. And that, in addition to some other circumstances, was enough to put the employer on notice that the plaintiff was complaining about sex discrimination in that case. So the law in this circuit has established that you don't have to say the word race or sex in order to prove that you engaged in protected conduct, and there's a similar case in Ohio where we also allege there's a violation. I cited it in the brief. It's called the Ferguson case where a man said, this woman is making me uncomfortable. He didn't say sexual harassment, but based on all the circumstances, the court said that was sufficient for him to have engaged in protected conduct. So there is law that supports very firmly our case. Even in the Yazdian decision, which is a Sixth Circuit decision, the plaintiff used the word hostile environment, but he didn't say hostile based on my national origin. He didn't say hostile based on anything. The court, again, looked at all the circumstances and determined that that was sufficient to engage in protected conduct. On the question, Judge, your point about Mr. Torres, Mr. Torres' response is something I omitted, but I think it's critical here in terms of what the employer or what he understood. When he responds to a complaint of discrimination by saying you're only saying that because you're black, to me that is sufficient evidence that would allow a jury to find that he clearly understood that Ms. Crawford was talking about race. Finally, there is the write-up is addressed in our briefs. There was never a write-up presented to Ms. Crawford in the form of any kind of verbal counseling or written counseling or written discipline that her behavior with her crew at that time needed to improve. Nothing in March of 2014 when she was let go. Okay, you're couching it in terms of at that time. I think the question was ever. There was never any discipline. There was comments in one of her evaluations while she was still a crew member, before she was a manager, while she was still a crew member. That was in 2012. In every evaluation after that. Was that the one about Bossie? I'm not sure that it said Bossie, Judge. I'm not positive. But there was a comment. In subsequent reviews, she was rated meets expectations, achieves, exceeds expectations, and was never written up for any kind of interactions with her crew. In light of all the evidence in the record, we would again respectfully request that this court reverse the decision in the district court and allow us to go forward and try this case. Thank you. All right. Thank you very much, and the case is submitted.